JUDGE WILLIAMS
delivered the opinion op the court:
This is a motion against the sheriff, Goodrum, and his sureties, for not returning, within thirty days of the return day, the execution of Green vs. Purdy, which issued from the Marion circuit court clerk’s office. The sheriff sets up, as a defense, that no such execution came to his hands.
The execution book, kept by the clerk, shows that an execution was issued, “No. 1,100, J. Green, assignee, vs. H. W. Purdy, ji' fa $150 — debt, interest from 26 May, 1858, $6.70, cost, judgment May term, 1858, date June 17, 1858, return day 4th Mo. July, 1858, delivered to Goodrum.”
The parol evidence tends strongly to prove that the clerk issued the execution, and put it in a rack in his office where thé sheriff usually found the executions; that lawyers and litigants had free access to said rack, and frequently took papers therefrom; that, by some unexplained casualty, this execution did not in fact come to the sheriffs hands.
Can this evidence be received to impeach the verity of the execution book?
Sec. 4, chap. 17, title Clerks, 1st Stan. Rev. Stat., 247, enacts that, “He shall keep a book in his office, in which he shall enter the names of the plaintiffs and defendants, the amount, and from what period the same bears interest, the date and return day, and to whom delivered, and when returned, of every execution which may issue from his office.”
When this case was before this court on a former appeal,. the judgment dismissing the motion was reversed, because, as this court then said, on the evidence then before them, “a-stronger prima facie case against the sheriff could not well have: been established.” The question we are now-.considering was-not made or decided by this court at that time...
“Courts of record speak by means of. their record only, and even where the transactions of courts, which are not, techni- - *276 cally speaking, of record, are to be proved, if such courts preserve written memorials of their proceedings, those memorials are the only authentic means of proof which the law recognizes. And it seems that, in general, when the law authorizes any person to make inquiry of a judicial nature, and to register the proceedings, the written instrument, so constructed, is the only legitimate medium to prove the result.” (3 Starkie’s Ev., 1042.)
Where a recognizance, purporting to be entered into before Alex. Ogle, prothanotory, in a case to obtain a certiorari from the judgment of a justice of the peace to the court of common pleas, defendant offered to prove that the whole instrument was in the handwriting of the prothonotary’s father, and that the father was not a regular deputy, but only employed to write for his son occasionally; yet the supreme court of Pennsylvania rejected the testimony. (Patton vs. Miller, 13 Serg. &. Raw., 254.) In the subsequent case of Coffman vs. Hampton, (2 Watts & Serg., 387,) the same court, on an appeal from ajudgment of a justice of the peace, held that the justice coukj not be allowed to testify “what the cause of action was before him in the case of Hampton vs. Coffman,” nor “whether his docket set forth precisely the cause of action;” because, continues the court, “the docket of the proceedings before the j ustice showed explicitly that the action was brought to recover a deficiency in a sale for account of a former purchaser. This was the best evidence, and parol evidence was not admissible to contradict or vary it.”
In the case of Taliaferro et al vs. Pryor, (12 Grattan's Reports, 277,) the appellate court of Virginia, under a statute of that State authorizing the several clerks, when their record should be destroyed by any means, upon the production to him of the original writing sq recorded, or a copy thereof, duly attested, &c., to record the same again,held, after the destruction of the office and papers by fire, that the clerk, having admitted to record a paper purporting to be duly attested by his predecessor in office, it could not be attacked, in a collateral proceeding, by showing that the copy admit ted to record was not attested by the former clerk or any authorized deputy.
*277 The Kentucky statute of 1815, regulating treasury warrant claims, provides that the actual survey shall be considered the commencement of the title, if registered within one year; if not, then from the time when registered. The surveyor made a survey for Flynn on 11th March, 1829, but which was not registered until 15th January. 1831, and patented 13th July, 1831. Cain obtained a certificate of survey from the same surveyor, for the same identical land, 11th March, 1830, had it registered within a year, and patented 11th April, 1831. As Cain’s patent related back to 11th March, 1830, and Flynn’s only to 15th January, 1831, when he registered his survey, Cain’s title was the elder. The surveyor was introduced, and testified that he had never made an actual survey for Cain, but furnished him with a certificate of survey from the field notes made at the time he executed .Flynn’s survey, This court rejected the testimony, remarking, “that principle and policy both forbid that written instruments, made by authority of law, or the compact of parties, the permanent repositories and testimonies of truth, and of the . most important rights, should be subject to be impeached, contradicted, or annulled, by loose, collateral, parol testimony. The appointed agent of the law, having made out, and certifying officially, the execution of a survey which by law is made the foundation of the patent, which by law is elevated to the dignity of record evidence of title, cannot be subject to the assault of parol testimony. The best interest of society demands that it should not, and the wisdom of the law forbids it.” (Cain vs. Flynn, 4 Dana, 500.)
In Taylor vs. Commonwealth, (3 Bibb, 356,) where a deputy sheriff had endorsed on an execution, -Came to hand 11th March,.1811,” but afterwards erased this-and endorsed, “Came to hand 24th March, 1811,” and the responsibility of the sheriff depended upon whether it did come to hand before the 24th March, Tyler, the deputy clerk, was permitted to testify that the execution was delivered to the deputy sheriff on the 11th March, and an entry made on the execution docket, that it was so delivered on that day, but that some one, unknown to him, Had altered the date from the 11th to 24th March on the *278 execution docket; that the deputy sheriff frequently came into the office and examined the execution docket. On objection to this evidence, as contravening the record, this court held, that there was no law requiring the clerk to note the time of delivering the execution, and that such entry, without authority of law, did not give it the authenticity of a record; and the objection to the evidence not well taken But, had it been otherwise, we can hardly suppose that the fraudulent alteration of a record, by an interested party; without authority of law, could make a record recognized by law, the verity of' which would be unimpeachable; the evidence would show it was not a record, because of the fraudulent alteration by an unauthorized person. Or, if we should be mistaken in this, a party, as the court held in that case, would not be allowed to avail himself of his own unauthorized and fradulent act. It is plainly to be inferred from this case, that the entry of the clerk> made in pursuance of law, should be regarded as a conclusive record.
In the case cited from Virginia, the court very properly, as we think, suggested that, if a party was injured by the careless or improper action of the clerk, he had a remedy against the clerk on his official bond, but could not attack the record in a collateral proceeding.
The obvious intention of the Legislature, in requiring ¡the execution book to be kept, and requiring the clerk to make the entries therein, as directed, was to furnish all parties with record evidence of the action of the officers, which could be easily obtained, and which should be conclusive in its character. This record is as much for the protection of the officer and his securities as for the parties, and to the faithful, dilli-gent officer will remain a sure protection against the imperfections and corruptions of parol testimony.
The cases cited show the solemnity and verity attached to records made by officers in the discharge of their legal official duties; and, as a great overruling public policy, such records are held conclusive in all collateral proceedings.
The statute does require the clerk to enter upon the execution book, “to whom delivered.'1' When the clerk has done this, *279 it must be held as conclusive in all collateral proceedings. Should this fix on the sheriff an unjust responsibility, we, like the Virginia court, think that his remedy would be against the clerk.
As the entry on the execution book must be deemed conclusive evidence that the execution went into Goodrum’s hands, it remains for him to show an excuse why it was not returned within thirty days of the return day thereof.
Wherefore, the judgment is reversed, and the cause remanded with directions for further proceedings not inconsistent with this opinion.